## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS ENFIELD,

      Petitioner,                        Civil No. 04-CV-73082-DT
                                              HONORABLE JOHN CORBETT O'MEARA
v.                                   UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

      Respondent,

_____/

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Thomas Enfield, ("Petitioner"), presently confined at the Oaks Correctional Facility in Manistee, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his convictions for first-degree felony murder, M.C.L.A. 750.316; and larceny from a person, M.C.L.A. 750.357. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

      Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court, in which he was tried jointly with his co-defendant, John Wilson, who was acquitted of the charges.

      Petitioner has provided a detailed statement of facts in his amended petition for writ of habeas corpus. Respondent has likewise provided a detailed factual summary of

1

the case, which does not essentially conflict with petitioner's statement of facts. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Cristini v. McKee,* 526 F. 3d 888, 894, n. 1 (6th Cir. 2008)("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations"). Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997). Accordingly, this Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arises out of the murder of Priscilla Ricketts. Ms. Ricketts died from injuries she suffered when defendant and codefendant, John Wilson, stole per purse and then ran her over with a sport utility vehicle.
>
> *People v. Enfield,* No. 224369, * 1 (Mich.Ct.App. September 27, 2002).
>
> Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 468 Mich. 910; 662

N.W. 2d 747 (2003).

Petitioner then filed a petition for writ of habeas corpus. On March 16, 2005, this Court entered an opinion and order granting petitioner's motion to hold his habeas petition in abeyance to permit petitioner to return to the state courts to exhaust additional claims

2

that he had failed to raise in the state courts prior to filing his habeas petition. The Court also administratively closed the case.

Petitioner then filed a post-conviction motion for relief from judgment with the trial court pursuant to M.C.R. 6.500, *et. Seq.,* which was denied. *People v. Enfield,* No. 1999-165935-FC (Oakland County Circuit Court, October 10, 2007). The Michigan appellate courts denied petitioner leave to appeal. *People v. Enfield,* No. 283912 (Mich.Ct.App. October 24, 2008); *lv. den.* 485 Mich. 925, 773 N.W.2d 703 (2009).

This Court subsequently lifted the stay of proceedings and permitted petitioner to file an amended petition for writ of habeas corpus. *See Enfield v. Palmer*, No. 2010 WL 538450 (E.D. Mich. February 10, 2010). Petitioner seeks a writ of habeas corpus on the following grounds:

> I. The trial court violated appellant's due process rights by admitting the non-testifying co-defendant's statements against interest, implicating both the codefendant and appellant in the incident and contradicting appellant's trial testimony that appellant acted alone in accidentally striking the decedent with a motor vehicle.
>
> II. The trial court violated appellant's due process rights by permitting testimony that appellant asked about beating a polygraph examination.
>
> III. The trial court violated appellant's due process rights by refusing to allow defense trial counsel to ask an incarcerated suspended attorney testifying to appellant's alleged admissions whether the attorney had embezzled client funds from the attorney's trust account, where probative for untruthfulness.
>
> IV. Defense trial counsel was constitutionally ineffective in eliciting and failing to move to suppress appellant's unfairly prejudicial prior record of theft offenses.
>
> V. The prosecutor violated appellant's due process rights in rebuttal argument

3

to the jury by unfairly denigrating appellant's defense and referring to appellant as "St. Enfield" after appellant testified that appellant acted alone in the charged incident.

VI. The adverse testimony of attorney Jeffrey Schaefer, whom petitioner had been consulting with as a lawyer, being used as evidence by the prosecutor at petitioner's trial violated rules of professional conduct, denied petitioner due process of law, and comprised a conflict of interest so devastating that prejudice must be presumed and reversal automatic.

VII. The State's multiple usage of the state recognized jailhouse lawyer, Phillip Turner, as a state informant against petitioner, and others, who have confided in jailhouse lawyer Turner after Turner is repeatedly allowed to set up shop in the Oakland County jail is an abominable practice, breaching confidentially and denying due process of law.

VIII. The State's intolerably offensive invasion of petitioner's attorney-client relationships and defense through an unethical attorney/informant, and the elicitation and utilization of privileged communications, including defense strategy and planned 'tactics' by the prosecution, is prosecutorial misconduct which rises to the level of being outrageous, violating due process of law and requiring an evidentiary hearing.

IX. Petitioner's Fifth and Sixth Amendment rights were violated by the State's use of industrious jailhouse informants, frequently used as State witnesses, to deliberately elicit incriminating information and inject false and inflammatory evidence into petitioner's trial, circumventing petitioner's right to counsel.

X. Petitioner's right to the effective assistance of counsel was violated when the State deliberately invaded petitioner's defense, intercepted petitioner's communication with counsel, and used privileged strategical information to interfere with the defense and obstruct the trial, intolerably destroying the attorney-client privilege.

XI. Petitioner was denied the effective assistance of appellate counsel when counsel incompetently abandoned the issues suggested by petitioner and his trial counsel, preventing the direct review of obstructionist, professional misconduct, which violated petitioner's right to due process of law and the effective assistance of counsel, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

4

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1)      resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly established
>> Federal law, as determined by the Supreme Court of the
>> United States; or
>> (2)      resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

 A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

 The Supreme Court has explained that "[A] federal court's collateral review of a

5

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III. Discussion

**A. Claims # 1 and # 3.  The Confrontation Clause claims.**

In his first and third claims, petitioner contends that he was deprived of his Sixth Amendment right to confrontation.

In his first claim, petitioner contends that his right to confrontation was violated

6

when the trial court permitted Bradley Privette and Daniel Crowley to testify about

statements made by the co-defendant John Wilson to them.  Crowley testified that

Wilson told him that he and petitioner stole a woman's purse and that the police were

searching for petitioner.  Privette testified that Wilson informed him that petitioner and

Wilson had run over a woman while petitioner was on "drugs".  Wilson also told Privette

that the woman had gotten into the way after petitioner stole her purse and that either

petitioner, or petitioner and Wilson, did not stop to avoid hitting the woman with their

vehicle.  The trial judge ruled that Wilson's statements were admissible under M.R.E.

804(b)(3) as statements against his penal interest.

Petitioner contends that the admission of Wilson's statements to Crowley and

Privette at their joint trial, where Wilson did not testify, was contrary to the holding in

*Bruton v. United States*, 391 U.S. 123, 127-28 (1968), in which the Supreme Court held

that a defendant is denied the constitutional right of confrontation where a non-testifying

co-defendant's incriminating confession is admitted at a joint trial.

Out of court statements that are testimonial in nature are barred by the Sixth

Amendment Confrontation Clause unless the witness is unavailable and the defendant

has had a prior opportunity to cross-examine the witness, regardless of whether such

statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36

(2004).  However, the Confrontation Clause is not implicated, and thus does not need not

be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547

U. S. 813, 823-26 (2006); *See also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir.

2008).  Testimonial statements do not include remarks made to family members or

acquaintances, business records, or statements made in furtherance of a conspiracy.

*Crawford,* 541 U.S. at 51-52, 56.  In holding that the Sixth Amendment right to

confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial
> hearsay].  It applies to 'witnesses' against the accused-in other words, those
> who 'bear testimony.' 1 N. Webster, An American Dictionary of the English
> Language (1828).  'Testimony,' in turn, is typically 'a solemn declaration or
> affirmation made for the purpose of establishing or proving some fact.' *Ibid.*
> An accuser who makes a formal statement to government officers bears
> testimony in a sense that a person who makes a casual remark to an
> acquaintance does not."
>
> *Davis,* 547 U.S. at 823-24 (quoting *Crawford,* 541 U.S. at 51).

Moreover, "[B]ecause it is premised on the Confrontation Clause, the *Bruton* rule,

like the Confrontation Clause itself, does not apply to nontestimonial statements." *U.S. v.*

*Johnson*, 581 F. 3d 320, 326 (6th Cir. 2009).

Wilson's statements to Crowley and Privette did not qualify as testimonial

statements covered by the Confrontation Clause because they were casual remarks made

to a friend or acquaintance and not ones made to law enforcement. *See Deshai,* 538 F. 3d

at 427; *See also Jackson v. Renico,* 179 Fed. Appx. 249, 255 (6th Cir. 2006).  Morever,

because the Confrontation Clause has no applicability to non-testimonial statements,

they may be admitted even if they lack indicia of reliability. *See Whorton v. Bockting,*

549 U.S. 406, 420 (2007).  The admission of Wilson's out-of-court statements to

Crowley and Privette did not violate petitioner's right to confrontation.

8

The Court is aware that at the time of petitioner's trial and direct appeal, the United States Supreme Court held that non-testimonial hearsay statements implicated a defendant's confrontation rights. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  Under the *Roberts* test, a non-testimonial hearsay statement, like an out-of-court testimonial statement, could be admitted only if the declarant was unavailable to testify and if the statement bore "adequate indicia of reliability." *Id.* (internal quotation marks omitted). A statement possessed "adequate indicia of reliability," if it fit within a "firmly rooted" hearsay exception or if it contained other "particularized guarantees of trustworthiness." *Id. Ohio v. Roberts,* however, is no longer good law in light of the Supreme Court's subsequent holdings in *Crawford* that overruled the *Roberts* test for admitting testimonial hearsay and the Supreme Court's subsequent holding in *Davis* that the Confrontation Clause does not apply to non-testimonial statements like the ones admitted against petitioner.  A habeas petitioner cannot obtain relief on the basis of a state court's allegedly unreasonable application of a Supreme Court precedent that no longer is good law. *Desai,* 538 F. 3d at 427-28; *See also Miller v. Stovall,* 573 F. Supp. 2d 964, 976 (E.D. Mich. 2008).  Accordingly, petitioner is not entitled to habeas relief on his first claim.

In his third claim, petitioner alleges that the trial court erred by prohibiting him from questioning a prosecution witness, Jeffrey Schaefer, about his alleged involvement in stealing money from a client trust account.  Schaefer had been an inmate at the Oakland County jail, where he met petitioner days before the trial in this case began.

9

Schaefer had been a lawyer, but he had been suspended from the practice of law because of convictions for fraudulent use of a financial transaction device. Petitioner had discussed his case with Schaefer and had admitted his involvement in the killing. Petitioner told Schaefer that the incident began when he went to a bank inside of a grocery store to cash a check to buy some heroin for himself and his employer, but he was unable to cash the check. Petitioner informed Schaefer that he saw the victim in a check-out line at the store. Because she looked affluent, and petitioner needed some money to purchase heroin, petitioner followed the victim out into the parking lot and stole her purse from her. Petitioner indicated to Schaefer that he and "John" fled in a red "Jimmy", i.e. a GMC truck, during which time they hit the victim with the vehicle. Petitioner's counsel sought to impeach Schaefer with evidence that he stole money from a client account, but the judge refused to let him.

The Michigan Court of Appeals rejected petitioner's claim, holding that the trial judge correctly concluded that petitioner had failed to established a proper foundation for questioning Schaefer about stealing money from a client account, because there was no independent evidence substantiating the matter. *Enfield,* Slip. Op. at * 5-6. The Michigan Court of Appeals further concluded that any alleged error would have been clearly harmless, in light of the fact that defense counsel extensively cross-examined Schaeer about his disbarment and his record of felony convictions involving theft, dishonesty, and drug possession. Counsel also established that based on Schaefer's record, the state bar association might revoke Schaefer's license to practice law. *Id.*

10

The Sixth Amendment Confrontation Clause guarantees the accused the right to cross examine adverse witnesses to uncover possible biases and expose the witness' motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308, 315-316 (1974). However, the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish. *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal citations omitted). The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

A state trial court "may circumscribe cross-examination if the party is unable to lay a proper evidentiary framework; where the offer is 'inherent[ly] speculative[]'; [and] the trial judge may 'prohibit [] cross-examiners from mounting fishing expeditions.'"*DiBenedetto v. Hall,* 272 F. 3d 1, 11 (1st Cir. 2001)(quoting *Bui v. Di Paolo,* 170 F. 3d 232, 244 (1st Cir. 1999)). In the present case, the trial court excluded petitioner's line of inquiry concerning Schaefer's alleged theft from a client account, because petitioner had failed to lay the proper foundation for the admission of this evidence. Requiring a defendant to lay a foundation for the admissibility of certain

11

evidence does not violate the Confrontation Clause. *See Dell v. Straub,* 194 F. Supp. 2d 629, 644 (E.D. Mich. 2002)(citing *Reddick v. Haws,* 120 F. 3d 714, 717 (7th Cir. 1997)).

Moreover, as the Michigan Court of Appeals indicated in rejecting petitioner's claim, Schaefer was impeached with his prior felony convictions for theft, dishonesty, and drug possession.  Schaefer was also impeached with the fact that he had been disbarred by the state bar association.  Petitioner also notes that although Schaefer testified that petitioner had threatened his life at the jail with a switchblade, for which Schaefer claimed that he had immediately notified jail staff and the detectives in this case, Schaefer later admitted that did not see any knife and acknowledged that he never notified anyone about the assault.  Schaefer was also forced to admit that he lied about how many times he had been convicted of fraud and had also testified falsely concerning his possession and usage of cocaine.  In light of other impeachment evidence presented against Schaefer, the admission of the evidence that Schaefer may have stolen money from a client account would have been cumulative and marginally relevant, such that its exclusion did not violate petitioner's Sixth Amendment right to confrontation. *See Washington v. Renico,* 455 F. 3d 722, 729-30 (6th Cir. 2006).  Petitioner is not entitled to habeas relief on his third claim.

**B.  Claim # 2.  The polygraph examination evidence claim.**

Petitioner next contends that that the trial court erred by allowing two witnesses, Phillip Turner and Derrick Tanner, to testify about a polygraph examination that petitioner was going to take.  Neither witness testified that petitioner actually took a

polygraph examination and passed or failed it.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 908-09 (E.D. Mich. 2006)(federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

Petitioner is not entitled to habeas relief on this claim.  The Supreme Court has never held that testimony or evidence which implies the results of a polygraph or similar test renders a criminal defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Maldonado v. Wilson,* 416 F.3d 470, 477 (6th Cir. 2005).  To grant habeas relief to petitioner "would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony about truth tests." *Id.,* at 478.  Because no Supreme Court precedent demands this result, the Michigan Court of Appeals' rejection of petitioner's claim was not unreasonable under 28 U.S.C. § 2254(d). *Id.*  Petitioner is not entitled to habeas relief on his second claim.

13

### C. Claim # 4.  The ineffective assistance of counsel claim.

Petitioner next claims that his trial counsel was ineffective because he conceded that some of petitioner's prior felony convictions were admissible to impeach petitioner's credibility as a witness.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of

14

the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

In rejecting petitioner's claim, the Michigan Court of Appeals first noted that all of the prior convictions that petitioner claims should have been suppressed were less than ten years old at the time of trial and were thus were not barred as untimely pursuant

15

to M.R.E. 609. *Enfield,* Slip. Op. at * 7. The Michigan Court of Appeals further ruled that petitioner's uttering and publishing conviction contained as an element the intent to defraud and was thus admissible under M.R.E. 609(a)(1). *Id.* The Michigan Court of Appeals further noted that petitioner's prior conviction for attempted breaking and entering a building with the intent to commit larceny involved an element of theft for purposes of its admission pursuant to M.R.E. 609. *Id.* Because these two convictions were admissible under M.R.E. 609, the Michigan Court of Appeals concluded that defense counsel's decision to elicit this evidence from petitioner on direct examination, as opposed to objecting to their admission, was a matter of trial strategy which they would not second-guess. *Id.*

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that petitioner's prior convictions for uttering and publishing and attempted breaking and entering were admissible under Michigan law to impeach petitioner's credibility, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003). Trial counsel's failure to move to exclude or limit reference to petitioner's prior convictions for uttering and publishing and attempted breaking and entering, which were used for impeachment purposes, was not ineffective

16

assistance of counsel, because it is not reasonable to believe that the trial court would have granted the motion to suppress, where this evidence was admissible under Michigan law. *See Wilson v. Henry*, 185 F. 3d 986, 990 (9th Cir. 1999).

The Michigan Court of Appeals conceded that petitioner's UDAA conviction was inadmissible, because unlike larceny, it does not include as an element the intent to permanently deprive the victim of his property and, thus, does not include an element of theft. However, the Michigan Court of Appeals concluded that petitioner was not prejudiced by counsel's failure to object to the admission of this prior conviction:

> Moreover, defendant has failed to show that trial counsel's error resulted in prejudice. In addition to the two convictions above, the jury heard ample evidence regarding defendant's conduct. Testimony established not only that defendant was a heroin addict and that he committed this crime to support his drug habit, defendant also admitted that he forged a check that belonged to his grandmother to buy drugs. Furthermore, defendant admitted that he struck the victim with the SUV and the physical evidence clearly showed that this was not an accident. In light of this and other overwhelming evidence, there is no reasonable probability that the outcome of the case would have been different had the UDAA conviction been excluded.

*Enfield,* Slip. Op. at 7-8 (internal citations omitted).

Assuming that counsel was ineffective for failing to move for the suppression of the UDAA conviction pursuant to M.R.E. 609, petitioner is unable to show that he was prejudiced, so as to be entitled to habeas relief, in light of the additional evidence of guilt presented against petitioner. *See James v. United States,* 217 Fed.Appx. 431, 436-37 (6th Cir. 2007). Petitioner is not entitled to habeas relief on his fourth claim.

**D.  Claim # 5.  The prosecutorial misconduct claim.**

17

Petitioner next contends that the prosecutor committed misconduct during his closing argument.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.;See also Payne v. Smith,* 207 F. Supp. 2d 627, 648 (E.D. Mich. 2002).  Moreover, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  In deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *See Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997).

Petitioner first contends that the prosecutor denigrated the defense by arguing to

18

the jury that petitioner's testimony was not worthy of belief, contending that petitioner's claim of accident was " a calculated, premeditated thought out process.  It is a game of smoke and mirrors."

The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 Fed. Appx. 469, 480 (6th Cir. 2007)(quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)).  Thus, a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.*

In the present case, the prosecutor's isolated sarcastic comments were not so incendiary so as to inflame the jury's passion or distract them from determining petitioner's guilt or innocence. *See Davis v. Burt,* 100 Fed. Appx. 340, 348 (6th Cir. 2004).  Moreover, the prosecutor's remarks were brief and fairly isolated and were part of a larger twenty seven page argument that focused on the evidence in the case. (Tr. 11/18/1999, pp. 3-16, 59-71).  The trial court instructed the jury after closing arguments that the lawyers' arguments were not evidence. (*Id.,* p. 74).  The prosecutor's remarks were relatively isolated, were not extensive, and were only a small part of a closing argument that focused heavily on summarizing the evidence presented at trial. *Byrd v. Collins*, 209 F. 3d 486, 532 (6th Cir. 2000).  When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not

evidence, the prosecutor's comments denigrating the defense did not render the entire trial fundamentally unfair. *Id.* at 533.

Petitioner next contends that the prosecutor committed misconduct by referring to petitioner's testimony as "the Gospel of St. Enfield," which petitioner contends amounts to a "thinly-veiled religious attack" on petitioner's defense

The prosecutor's reference to petitioner's testimony as the "Gospel of St. Enfield" does not entitle petitioner to habeas relief. The prosecutor's comments were isolated, there is no indication that they misled the jury, and the prosecutor made no other reference to religion in his closing argument. *See U.S. v. Roach,* 502 F. 3d 425, 435-36 (6th Cir. 2007)((in prosecution of two police officers for depriving two Hispanic victims of their civil rights under color of law by stealing money from them during a traffic stop, prosecutor's closing argument comment that the Commandment, "thou shalt not steal" did not say thou shalt not steal from people you know, or from citizens, or from white people, while improper, was not flagrant, prosecutor's comment was isolated and there was no indication that it misled the jury, and government made no other reference to religion); *Hicks v. Collins,* 384 F. 3d 204, 223 (6th Cir. 2004)(prosecutor's ambiguous reference to "fate, God, a deity or something" as source of responsibility for death sentence, to extent it may have improperly interjected religion, was harmless, isolated statement). Moreover, in light of the substantial evidence in this case, the prosecutor's brief reference to religion during his closing argument did not have a entitle petitioner to habeas relief. *See McCary v. Lewis,* 255 Fed.Appx. 78, 79-80 (6th Cir. 2007). Petitioner

is not entitled to habeas relief on his fifth claim.

**E. Claims # 6-11.  The procedurally defaulted claims.**

Respondent contends that petitioner's remaining six claims are procedurally

defaulted because petitioner raised these claims for the first time in his post-conviction

motion and failed to show cause and prejudice for failing to raise these claims in his

appeal of right, as required by M.C.R. 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar,

federal habeas review is also barred unless petitioner can demonstrate "cause" for the

default and actual prejudice as a result of the alleged constitutional violation, or can

demonstrate that failure to consider the claim will result in a "fundamental miscarriage

of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to

show cause for his procedural default, it is unnecessary for the court to reach the

prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an

extraordinary case, where a constitutional error has probably resulted in the conviction of

one who is actually innocent, a federal court may consider the constitutional claims

presented even in the absence of a showing of cause for procedural default. *Murray v.*

*Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of

innocence requires a petitioner to support the allegations of constitutional error with new

reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324

(1995).  Actual innocence, which would permit collateral review of a procedurally

defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v.*

*United States*, 523 U.S. 614, 623 (1998).

M.C.R. 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention the petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-

conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the petitioner's claims. *Id.*

The Oakland County Circuit Court judge, in rejecting the petitioner's motion for relief from judgment, concluded that petitioner had failed to demonstrate either actual prejudice or good cause as required by M.C.R. 6.508(D)(3)(b) to obtain relief on his claims. *People v.Enfield,* No. 1999-FC165935-FC, * 15-16 (Oakland County Circuit Court, October 10, 2007).  Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005).  The fact that the trial court may have also discussed the merits of petitioner's claims in addition to invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999).  A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991).  Petitioner's claims

23

are procedurally defaulted. [1]

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.   Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

---

[1] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F. 3d at 291.  However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

24

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting petitioner's sixth through tenth claims that petitioner raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel from the Michigan State Appellate Defender Office filed a forty four page appeal brief which raised what now make up the first five claims that petitioner raises in his petition for writ of habeas corpus. [2] Petitioner has not shown that appellate counsel's strategy in presenting these five claims

---

[2] *See* Defendant-Appellant's Brief on Appeal. [Dkt. # 35].

25

and not raising other claims was deficient or unreasonable. Moreover, for the reasons

stated by the Oakland County Circuit Court in the opinion and order denying post-

conviction relief, *See Enfield,* No. 1999-FC165935-FC, * 4-15, as well as by the

Assistant Michigan Attorney General in his answer to the petition for writ of habeas

corpus, none of the claims that were raised by petitioner in his post-conviction motion

were "dead bang winners." Because the defaulted claims are not "dead bang winners,"

petitioner has failed to establish cause for his procedural default of failing to raise these

claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

      Moreover, because these post-conviction claims lack merit, this Court must reject

any independent ineffective assistance of appellate counsel claim raised by petitioner in

his eleventh claim. "[A]ppellate counsel cannot be found to be ineffective for 'failure to

raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir.

2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

      In the present case, petitioner has failed to allege any reasons to excuse his

procedural default. Because petitioner has not alleged or demonstrated any cause for his

procedural default, it is unnecessary to reach the prejudice issue regarding his sixth

through tenth claims. *Smith*, 477 U.S. at 533; *See also Isabell v. Curtis,* 36 Fed. Appx.

785, 788 (6th Cir. 2002); *Payne v. Smith,* 207 F. Supp. 2d at 638-39.

      Additionally, petitioner has not presented any new reliable evidence to support

any assertion of innocence which would allow this Court to consider his sixth through

tenth claims as grounds for a writ of habeas corpus in spite of the procedural default.

Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's sixth through tenth claims on the merits. *See Payne,* 207 F. Supp. 2d at 639.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Oakland County Circuit Court in rejecting petitioner's sixth through eleventh claims on post-conviction review, as well as for the reasons stated by the respondent in their answer to the petition, petitioner has failed to show that his claims have any merit. The reasons justifying the denial of petitioner's post-conviction claims was "ably articulated by the" state trial court, therefore, "the issuance of a full written opinion" by this Court regarding these claims "would be duplicative and serve no useful, jurisprudential purpose." *See Bason v. Yukins,* 328 Fed. Appx. 323, 324 (6th Cir. 2009). Petitioner's remaining claims are thus barred by procedural default and do not warrant relief.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is

27

required to show that reasonable jurists could debate whether, or agree that, the petition

should have been resolved in a different manner, or that the issues presented were

adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473,

483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims

on the merits, the petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at

484.  Likewise, when a district court denies a habeas petition on procedural grounds

without reaching the prisoner's underlying constitutional claims, a certificate of

appealability should issue, and an appeal of the district court's order may be taken, if the

petitioner shows that jurists of reason would find it debatable whether the petitioner

states a valid claim of the denial of a constitutional right, and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present and the district court is correct to invoke it to

dispose of the case, a reasonable jurist could not conclude either that the district court

erred in dismissing the petition or that the petition should be allowed to proceed further.

In such a circumstance, no appeal would be warranted. *Id.*  "The district court must issue

or deny a certificate of appealability when it enters a final order adverse to the

applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

       For the reasons stated in this opinion, the Court will deny petitioner a certificate

of appealability because he has failed to make a substantial showing of the denial of a

federal constitutional right with respect to any of the claims.  The Court will also deny

petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See*

*Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in*

*forma pauperis.*


                              <u>s/John Corbett O'Meara</u>
                              United States District Judge


Date:  March 16, 2012


I hereby certify that a copy of the foregoing document was served upon the parties
of record on this date, March 16, 2012, using the ECF system and/or ordinary mail.


                              <u>s/William Barkholz</u>
                              Case Manager

29